**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON**

**KEITH LOWE,**

       **Plaintiff,**

**v.**                                                                 **Case No. 2:17-cv-02345**

**DR. SHERRY JOHNSON, *et al.*,**

       **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable Thomas E. Johnston, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). This matter is proceeding on the plaintiff's Amended Complaint (ECF No. 19). Pending before the court are the Motions to Dismiss of Daniel Conn (ECF No. 24) and Donna Warden (ECF No. 35), and the plaintiff's Motion to Deny Daniel Conn's Motion to Dismiss (ECF No. 38).[1]

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The plaintiff, who is an inmate at the Mount Olive Correctional Complex ("MOCC"), suffers from epilepsy and seizures as a result thereof. The Amended Complaint alleges that the plaintiff was prescribed Dilantin three times a day for his condition. However, according to the Complaint, on April 2, 2015, Dr. Sherri Johnson

---

[1] The plaintiff's Motion to Deny Motion to Dismiss (ECF No. 38) is essentially the plaintiff's Response to Defendant Conn's Motion to Dismiss and will be treated as such. Accordingly, the Clerk is directed to terminate the motion associated with this filing.

terminated the plaintiff's use of Dilantin, without warning, which allegedly caused the plaintiff to have a series of seizures causing significant injury. (ECF No. 19 at 1, 11).

Specifically, the plaintiff alleges that his repeated requests for his seizure medication were ignored, which caused at least two seizures on April 6, 2015, and April 11, 2015.[2]  The Amended Complaint further alleges that, when Dr. Johnson stopped his medication, he informed Donna Warden, Wexford Health Sources, Inc.'s Health Services Administrator, as well as David Ballard, who was then the Warden at MOCC, and Jim Rubenstein, who was then the Commissioner of the West Virginia Division of Corrections (WVDOC"). (ECF No. 19 at 12 and Exs. 4, 6, and 7).

The plaintiff further alleges that, despite these individuals having actual knowledge that the plaintiff's seizure medication had been stopped without warning, they failed to act until the plaintiff had multiple seizures, causing him to defecate, urinate, vomit and convulse on the concrete floor in his cell and subjected him to a substantial risk of harm, including unnecessary pain and suffering and preventable injury. (*Id.* at 3-4).

Counts I and II of the Amended Complaint are brought under 42 U.S.C. § 1983, alleging that the defendants violated the plaintiff's rights under the Eighth and Fourteenth Amendments.  Count III of the Amended Complaint alleges a state law claim of breach of contract concerning the contract between Wexford Health Sources, Inc. ('Wexford") and the West Virginia Division of Corrections ('WVDOC"), neither of which are named as defendants herein, to provide medical services to inmates in WVDOC facilities.  Count IV of the Complaint, which is brought against defendants Johnson, Warden, and Conn as representatives of Wexford, alleges a violation of the West Virginia

---

[2] The plaintiff's Amended Complaint states that this second seizure occurred on April 11, 2015.  However, in his Response to defendant Donna Warden's Motion to Dismiss, he clarifies that this seizure actually occurred on April 10, 2015.  (ECF No. 44 at 2).  Thus, the undersigned will use the corrected date herein.

Consumer Credit and Protection Act[3], W. Va. Code § 46A-6-101 *et seq.* ("WVCCPA"). Finally, Count V of the Amended Complaint alleges a state law claim of Intentional Infliction of Emotional Distress against all of the defendants.

## STANDARD OF REVIEW

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints. However, in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556.

\* \* \*

---

[3] This act is referred to by the plaintiff as the "West Virginia Consumer Fraud and Deception Trade Practice Act."

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

## ANALYSIS

### A.    The Complaint fails to state a plausible Eighth Amendment claim against defendant Donna Warden.

At the time of the matters addressed in the Amended Complaint, Donna Warden was a Registered Nurse, who was serving as Wexford's Health Services Administrator.[4] The plaintiff alleges that Warden "knew that plaintiff's seizure medication was cut off, knew plaintiff would have seizures without medication, knew plaintiff had seizures after medication was stopped, did nothing, and caused plaintiff to have more seizures; therefore she was deliberately indifferent to plaintiff's serious medical needs." (ECF No. 19 at 17, ¶ 50). The plaintiff further alleges that Warden was a supervisor of defendant Johnson and, thus, allowed Johnson and other Wexford staff to deny plaintiff and other inmates appropriate medications. (*Id.* at 24-25, ¶¶ 30-31).

The plaintiff claims that the defendants' deliberate indifference to a serious medical need has violated his rights under the Eighth Amendment's guarantee against cruel and unusual punishment, which is made applicable to the state through the Fourteenth Amendment.[5] The vehicle for such a claim is section 1983 of Title 42 of the United States Code, which provides in pertinent part:

---

[4] The Amended Complaint mistakenly refers to Warden as the "Medical Director."
[5] The undersigned does not read the Amended Complaint to be making any separate claim under any of the other provisions of the Fourteenth Amendment.

4

> Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . . .

42 U.S.C. § 1983. While not in itself a source of substantive rights, section 1983 provides a "method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To successfully establish a section 1983 claim, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)) [Emphasis added].

In *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" This is a low standard. The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'" *Id.* at 833.

Moreover, to sustain an Eighth Amendment claim, a prisoner must show two things: (1) "the deprivation must be, objectively, 'sufficiently serious;'" that is, "denial of 'the minimal civilized measure of life's necessities;'" and (2) the prison official had a "'sufficiently culpable state of mind;'" that is, "'deliberate indifference' to inmate health

or safety." *Id.* at 834. (Citations omitted.)  The Supreme Court rejected an argument that an objective test of deliberate indifference be established.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990); *see also Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) (collecting cases).  "Serious medical needs" are those which have been diagnosed by a physician as mandating treatment or that are so obvious that even a lay person would easily recognize the necessity for a doctor's attention.  *Gaudreault v. Munic. of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990).

> Deliberate indifference may be demonstrated by either actual intent or reckless disregard.  *See Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985). A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position.  *See id.*  Nevertheless, mere negligence or malpractice does not violate the Eighth Amendment.  *See* [*Estelle v. Gamble*, 429 U.S. 97, 106 (1976)].

*Miltier*, 896 F.2d at 851-852.

The burden of demonstrating deliberate indifference to a serious medical need is very high.  It is well-settled that:

> A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain.  *See Farmer*, 511 U.S. at 832-35; *Sosebee*

v. Murphy, 797 F.2d 182-83 (4th Cir. 1986); Loe v. Armistead, 582 F.2d
1291, 1296-97 (4th Cir. 1978).

Rush v. VanDevander, 2008 WL 495651 (W.D. Va., Feb. 21, 2008); Banks v. Green Rock

Correctional Center Medical Dept., 2007 WL 2903673 (W.D. Va., Oct. 3, 2007).

However, negligence is not sufficient to demonstrate deliberate indifference to a serious

medical need. See Webster v. Jones, 554 F.2d 1285 (4th Cir. 1977).

Likewise, disagreements between a health care provider and the inmate over a

diagnosis and the proper course of treatment are not sufficient to support a deliberate

indifference claim, and questions of medical judgment are generally not subject to judicial

review. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d

318, 319 (4th Cir. 1975). As noted by the Fourth Circuit, an inmate is not entitled to

unqualified access to health care and treatment may be limited to what is medically

necessary and not "that which may be considered merely desirable" to the inmate.

Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977).

In Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994), the Court held that supervisors may

be liable for the actions of their subordinates where the supervisor, by his own conduct,

was deliberately indifferent to, or tacitly authorized or approved prior constitutional

violations. Such liability is not based on respondeat superior, but rather upon "a

recognition that supervisory indifference or tacit authorization of subordinates'

misconduct may be a causative factor in the constitutional injuries they inflict on those

committed to their care." 13 F.3d at 798 (quoting Slakan v. Porter, 737 F.2d 368 (4th Cir.

1984)). In Shaw, the Fourth Circuit discussed the following elements necessary to

establish a supervisor's liability under 42 U.S.C. § 1983:

1)    The supervisor had actual or constructive knowledge that his
      subordinate was engaged in conduct that posed "a pervasive and

> unreasonable risk" of constitutional injury to citizens like the plaintiff;
>
> 2)    The supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and
>
> 3)    There was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injuries suffered by the plaintiff.

13 F.3d at 799.  However, in *Farmer*, *supra*, the Supreme Court clarified that a prison official's "actual subjective awareness" of an excessive risk of harm or safety was required to hold the official liable under the Eighth Amendment.  Thus, a prison official cannot be held liable for the failure to alleviate a risk that he should have perceived, but did not in fact perceive.  511 U.S. at 838.  As further noted in *Evans v. Chalmers*:

> [T]he Supreme Court explained in *Iqbal* that "a supervisor's mere knowledge" that his subordinates are engaged in unconstitutional conduct is insufficient to give rise to liability; instead a supervisor can only be held liable for "his or her own misconduct."  [556 U.S. at 677.]

703 F.3d 636, 660-61 (4th Cir. 2013).  Thus, to hold a supervisory defendant liable, the plaintiff must allege facts that allow the court to draw a reasonable inference that the supervisor's own conduct permitted the constitutional violation to occur.  *Iqbal*, 556 U.S. at 677.

Warden's Motion to Dismiss asserts that the Amended Complaint fails to state a plausible Eighth Amendment claim against her.  Warden's Memorandum of Law states:

> [T]he Amended Complaint arises out of a single incident where Mr. Lowe's medication of Dilantin was stopped by Dr. Johnson on April 2, 2015, because Mr. Lowe refused to have his blood drawn for the necessary monitoring laboratory tests necessary to the administration of Dilantin. According to the Amended Complaint, Mr. Lowe then suffered two seizures, one on April 6, 2015, and one on either April 10 or April 11, 2015.  By April 23, 2015, approximately three weeks after he had been removed from Dilantin, he had already been placed upon a different anti-seizure medication.  Judging from the lack of allegations of subsequent seizures in

the Amended Complaint, it can be assumed that the other anti-seizure medication was successful.

(ECF No. 36 at 4).

Warden further contends that there is no allegation that she was involved in the decision to stop the plaintiff's Dilantin medication and, as an RN, does not have authority to prescribe medication or stop medication that has been prescribed by a physician.  (*Id.*) She further asserts that the only other factual allegation against her is that, on April 23, 2015, she responded to a grievance the plaintiff filed about the discontinuation of his Dilantin.  That response states:

> Mr. Lowe, the Dilantin was discontinued because you were noncompliant with providing blood for lab analysis that is required to monitor during administration of this specific medication.  This was explained to you.  Now, you have been prescribed another oral anti-seizure medication "Kepra."  This medication will not require lab tests to be drawn for therapeutic monitoring.

(ECF No. 19, Ex. 2).  Warden asserts that these allegations are insufficient to support a claim of deliberate indifference under the Eighth Amendment.

The plaintiff's Response to defendant Warden's Motion to Dismiss asserts, without any support therefore, that Warden is Dr. Johnson's superior, and that she was actually aware of the substantial risk of harm that existed when Johnson stopped his Dilantin medication.  His Response states:

> It should be noted that Dr. Johnson is a subordinate of Donna Warden, who is the Health Service Administrator (HSA) although Warden is a Registered Nurse, and Johnson is a Doctor, Warden's position and title as (HSA) places her in a "supervisory" role, who ultimately oversees all employees of Wexford at MOCC, including Dr. Johnson.   With that said, after Dr. Johnson cut off the plaintiff's seizure medication he had a seizure on April 6, 2015.  After having that seizure, the plaintiff wrote a letter to defendant Warden expressing his concerns about his seizure medication being cut off, and his potential for having more seizures if he did not receive his medication, the plaintiff wrote the letter in hopes that Warden would quickly and promptly address the issue and restart his seizure medication

9

immediately.    The letter sent to Warden on April 7, 2015, placed Ms. Warden on notice and made her aware that without plaintiff's seizure medication there was a substantial risk that he would have another seizure.

(ECF No. 44 at 2).

Thus, the plaintiff contends that Warden clearly knew of the substantial risk of harm to the plaintiff's health from the termination of his medication, but failed to address the issue or take any kind of corrective action.  (*Id.*)  His Response further asserts:

> Ultimately, weeks later Ms. Warden and Dr. Johnson simply switched the plaintiff's seizure medication to another kind in which the plaintiff would not have to give blood in order to take it.  A decision that should have and could have easily been made on April 1, 2015, when plaintiff's seizure medication was cut off, which would have prevented the plaintiff from having multiple seizures, nor suffered any injury from those seizures in the first place had they just switched seizure medications on April 2, 2015, instead of cutting the plaintiff's medication off completely.
>
> The plaintiff maintains that based on Ms. Warden's inaction or actions in her capacity as the (HSA) and as an (RN) she is liable for the plaintiff's seizures once she became aware of them, and her disregard to act as a supervisor constituted deliberate indifference to his serious medical needs.

(*Id.* at 3).

The plaintiff acknowledges that, as an RN, defendant Warden did not directly play a role in the termination of his Dilantin; however, he again maintains that as the HSA, she had the authority to either restart the plaintiff's medication or to make Dr. Johnson do so.  He further contends that Warden could have required or orchestrated the switch of his medication sooner than it occurred.  (*Id.*)  His Response asserts that discovery may be necessary to establish Warden's authority as HSA.   (*Id.* at 3-4).   The Amended Complaint further asserts, in a conclusory manner, that Warden has "routinely condoned a pattern and practice of providing inadequate medical care and tacitly authorizing the practice."  (*Id.* at 5).

10

Defendant Warden's Reply asserts that she is not the "Medical Director" at MOCC, who is required to be a physician, and that she could not order Dr. Johnson to prescribe a particular medication or treatment for any inmate's condition. (ECF No. 45 at 1). Her Reply states:

> No matter how many letters Mr. Lowe wrote to Donna Warden, he could not change her lack of authority over Dr. Johnson or confer a medical degree upon her so she could prescribe medications. He is seeking to impose liability over Donna Warden for failing to do that which she could not do – override Dr. Johnson's decision and/or prescribe different medications for Mr. Lowe.
>
> There is no question from the pleadings and exhibits that Donna Warden had nothing to do with Dr. Johnson's decision to discontinue the Dilantin. Dr. Johnson made that decision based upon her medical judgment that she could not continue to order Dilantin for the Plaintiff when he refused to provide blood samples necessary to monitor the Dilantin. Such a decision does not constitute deliberate indifference because it was a medical judgment by Dr. Johnson. The Plaintiff merely disagrees with that decision.

(*Id.* at 1-2).

The plaintiff has failed to establish that defendant Warden had any actual involvement in the decision to discontinue the plaintiff's Dilantin prescription, or that she had any authority to do so. Moreover, the plaintiff has failed to establish that Warden had supervisory authority over Dr. Johnson and could have overridden her medical judgment to discontinue the Dilantin or place the plaintiff on another medication.

Additionally, the fact that Warden responded to the plaintiff's grievance, which occurred after he had been placed on the new medication, is insufficient to establish a basis for an Eighth Amendment claim. It is well established that denying a prisoner's grievances, by itself, "is not the type of personal involvement required to state an [Eighth Amendment] claim." *See, e.g., Lowe v. Matheney*, No. 2:13-cv-22416, 2015 WL 5795867 *9 (S.D. W. Va. Sept. 30, 2015) (Goodwin, J.) (inadequacy of allegations involving

11

supervisory liability claim based upon denial of grievances); *see also Larson v. Meek*, 240 Fed.Appx. 777, 780 (10th Cir. 2007); *Ferris v. Jones*, No. 4:14-cv-454, 2015 WL 4668297, at *9 (N.D. Fla. Aug. 5, 2015). Thus, the plaintiff's allegations concerning Warden's supervisory liability are largely conclusory, speculative and unsupported. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Amended Complaint fails to state a plausible Eighth Amendment claim against defendant Donna Warden.

> **B.    The plaintiff's claims against defendant Conn are unexhausted and fail to state any plausible claim for relief against him. Likewise, his state law claims fail to state a plausible claim for relief against any of the defendants.**

Defendant Daniel Conn is Wexford's Chief Executive Officer and has no direct involvement in medical treatment at MOCC. His Motion to Dismiss asserts that the plaintiff cannot establish a plausible claim against him under the Eighth Amendment because he had no direct involvement in the decision to discontinue the plaintiff's Dilantin prescription, and was not actually aware of any substantial risk of harm to the plaintiff resulting therefrom. His Memorandum of Law states:

> [The plaintiff] attempts to allege supervisory liability on the part of the defendant, Daniel Conn, CEO of [Wexford]. Of course, Mr. Conn does not provide any medical care to Mr. Lowe. Mr. Lowe alleges that all of the defendants, including Mr. Conn, were deliberately indifferent to his serious medical need of epilepsy and seizures.

(ECF No. 25 at 2). Defendant Conn's Motion to Dismiss focuses on the fact that the plaintiff's grievance concerning the discontinuation of his Dilantin did not address any conduct by him. Thus, Conn asserts that any claims against him are unexhausted and must be dismissed under 42 U.S.C. § 1997e(a) and West Virginia Code § 25-1A-2. (*Id.* at 3-5).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), was enacted "to address concerns about the 'ever-growing number of prison-condition lawsuits that were threatening to overwhelm the capacity of the federal judiciary.'" *Green v. Young*, 454 F.3d 405, 406 (4th Cir. 2006) (quoting *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 676 (4th Cir. 2005)). "The PLRA imposes some rather substantial limitations on a prisoner's ability to initiate a civil action." *Id.* One such limitation is the requirement that prisoners exhaust administrative remedies within the prison before filing a civil action." *Id.*

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In *Booth v. Churner*, 532 U.S. 731 (2001), the Supreme Court of the United States held that exhaustion of administrative remedies is mandatory, regardless of the type of relief sought or offered through the administrative procedures. *Id.* at 741. In *Booth*, the Court required exhaustion even where the grievance process does not permit the award of money damages, and the prisoner seeks only money damages, as long as the grievance tribunal has authority to take some responsive action. *Id.*

Like the PLRA, the West Virginia Prison Litigation Reform Act ("WVPLRA") "require[s] inmates to exhaust their administrative remedies before they bring a lawsuit." *Legg v. Adkins*, No. 2:16-cv-01371, 2017 WL 722604, at *2 (S.D. W. Va. 2017) (citing 42

U.S.C. § 1997e(a); W. Va. Code § 25-1A-2a(i)).  Under the WVPLRA, "[a]n inmate may not bring a civil action regarding an ordinary administrative remedy until the procedures promulgated by the agency have been exhausted." W. Va. Code § 25-1A-2(c).  The WVPLRA defines an ordinary administrative remedy as "a formal administrative process by which an inmate submits a grievance seeking redress or presenting concerns regarding any general or particular aspect of prison life. . . . An ordinary administrative remedy includes, but is not limited to, . . . staff treatment or some other alleged wrong." *Id.* § 25-1A-2(a). Under the WVPLRA,

> An ordinary administrative remedy is considered exhausted when the inmate's grievance complies with duly promulgated rules and regulations regarding inmate grievance procedures, has been accepted, fully appealed and has received a final decision from the Commissioner of Corrections or the Commissioner's designee, or the Executive Director of the Regional Jail Authority, or the Director's designee.

W. Va. Code § 25-1A-2(d). While "failure to exhaust available administrative remedies is an affirmative defense," it is a threshold issue that must be resolved before reaching the merits of the underlying claims for relief.  *Jones*, 549 U.S. at 216; *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).  If a plaintiff fails to exhaust his or her administrative remedies under the PLRA or WVPLRA, then the defendant is entitled to judgment as a matter of law. *See Legg*, No. 2:16-cv-01371, 2017 WL 72604, at *2. Whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." *Creel v. Hudson*, No. 2:14-cv-10648, 2017 WL 4004579, at *3 (S.D. W. Va. 2017) (citing *Drippe v. Tobelinski*, 604 F.3d 778, 782 (3d Cir. 2010)).

The plaintiff's Response asserts that he was not required to name every defendant he intends to sue and, thus, WVDOC Policy Directive 335.00 "does not require him to name defendant Conn or any allegations/claims against him, therefore Defendant Conn's

argument that the plaintiff did not exhaust his administrative remedies must fail." (ECF No. 39 at 2). He further asserts that "the level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison requirement , and not the [PLRA] that define[s] the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 219 (2007). (ECF No. 39 at 2). Thus, the plaintiff contends that "grievances are not required to rehearse the legal arguments and claims later asserted against the defendants in a lawsuit." (*Id.* at 3, citing *Griffen v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009)).

The plaintiff's Response further contends:

> Further, the plaintiff clearly named the medical provider and employees of Wexford in his grievance which is [sufficient] to put on notice any and all individuals or entities involved with Wexford who provides medical care to MOCC. In other words, the plaintiff contends that naming Wexford is more than enough to put the defendant on notice of claims against him, because Daniel Conn is listed as the CEO of Wexford. *Austin v. Correctional Medical Services, Inc.*, 2008 WL 4426342 (W.D. Mich. Sept. 26, 2008) (grievance against "the Medical Provider Service Department" held "more than sufficient to put on notice any and all individuals and entities involved with providing health care to prisoners at MCF"); *Binion v. Glover*, 2008 WL 409 7407 (E.D. Mich. Aug. 2008) (holding "failure to identify a person by name does not preclude exhaustion . . . as long as the prisoner identifies a defendant based on the factual allegations." Complaint or grievance about "dialysis unit" deemed exhausted against medical defendants who violated policies and who failed to enforce them as supervisors.) *Also see Johnson v. Johnson*, 385 F.3d 503, 523 (5th Cir. 2004) (holding identification of "unit classification committee" was sufficient to exhaust administrative remedies as to members and employees); *Cutler v. Correctional Medical Services*, 2010 WL 339760 (D. Idaho Jan. 22, 2010) (complaint about inadequate medical care sufficiently notified private medical provider and supervisory personnel of allegations that the medical provider and employees were not performing its duties). *Also see Downing v. Correctional Medical Services, Inc.*, 2009 WL 511849 (W.D. Mich. Feb. 26, 2009) (naming some individuals plus "Bureau of Health Care" personnel who had treated plaintiff suffice).

(*Id.* at 3).

Defendant Conn's Reply contends that the plaintiff's grievance was specifically directed at the discontinuance of his Dilantin and he was advised that the medication was stopped because of his own failure to submit to the necessary bloodwork for monitoring his use of the drug. Conn's Reply further contends that "[t]he grievance does not refer to Mr. Conn nor is it directed generically to any executive of [Wexford]. (ECF No. 40 at 2). Conn further asserts:

> Plaintiff now claims that his naming of healthcare provider, Wexford, should put all employees, staff, managers, supervisors, officers, directors, and chief executive officers of [Wexford] on notice that they could be sued by the Plaintiff if the grievance is not granted. Such an argument is nonsensical.
>
> The whole purpose of the grievance system is to allow the prison officials and the medical provider at the facility to correct any legitimate complaints that the prisoners may have. As discussed in the Motion of Mr. Conn and the Memorandum in Support thereof, Courts have uniformly held that prisoners may not take advantage of the litigation system unless and until they have completed the grievance process with respect to the claims asserted therein. The cases cited by Mr. Lowe are related to not naming every individual members of the medical staff or other people who are personally involved in the care of Mr. Lowe. There is no question that Mr. Conn was not involved in the medical care of Mr. Lowe and had no personal involvement with him whatsoever. Mr. Lowe does not dispute this fact.

(*Id.*)

Defendant Conn further asserts that defendant Johnson, alone, made the medical judgment to discontinue the plaintiff's Dilantin, and that no allegations have been or could be made that defendant Conn was directly involved in that decision. Conn further asserts that the plaintiff cannot establish a basis for supervisory liability against him because he had no actual knowledge of the plaintiff's medical condition or any substantial risk of harm to the plaintiff. His Response states that "[t]here is simply no factual allegations in the Amended Complaint nor in Mr. Lowe's grievance which would identify any potential claims against the CEO of [Wexford], whether it be Mr. Conn or anyone

16

else." (*Id.* at 3). Additionally, defendant Conn emphasizes that the plaintiff's claims arise out of a single incident where Dr. Johnson discontinued his medication because the plaintiff would not comply with the bloodwork requirement, and his allegations cannot "demonstrate that there is an official policy or custom for which Mr. Conn is responsible." (*Id.*)

While the plaintiff's Response to Conn's motion correctly asserts that he is not required to name every defendant he intends to sue in a grievance, he was expected to address the subject matter of his potential claims. In the instant matter, the plaintiff grieved the fact that his Dilantin prescription was discontinued and that he suffered seizures as a result thereof. However, nothing in his grievance can be attributed to defendant Conn, and the grievance did not in any way address the contract between Wexford and the WVDOC, or the medical services provided generally to inmates thereunder. Thus, nothing in the grievance can be construed to have exhausted his allegations of deliberate indifference to a serious medical need by defendant Conn or his breach of contract or a violation of the WVCCPA against any of the defendants.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff failed to properly exhaust any of his claims against defendant Daniel Conn.

Moreover, even if the District Court determines that the plaintiff's claims against defendant Conn should not be dismissed for failure to exhaust administrative remedies, such claims fail to state any plausible claim for relief against him. First, because he had absolutely no involvement in the decision to discontinue or change the plaintiff's seizure medication, and is not alleged to have had any actual knowledge thereof, the Amended

17

Complaint fails to state any plausible claim under the Eighth Amendment against defendant Conn.

Additionally, the Amended Complaint fails to state any plausible breach of contract claim against defendant Conn (or any of the named defendants) under West Virginia law. The Amended Complaint alleges that the contract between the WVDOC and Wexford, requires that Wexford "ensure that all medical services are provided in accordance with medically accepted community standards of care." (ECF No. 19 at 28, ¶ 91).[6] The Amended Complaint further asserts that "[t]his agreement was made for the benefit of MOCC inmates, including the plaintiff, and as a result, Wexford had a duty to the plaintiff to ensure that he received appropriate and adequate medical attention and treatment while incarcerated." (*Id.*, ¶ 92).

The plaintiff further alleges that "Wexford by and through its contracted medical personnel, employees and agents breached this agreement by failing to provide the appropriate and adequate care for plaintiffs' and other inmates' serious medical needs, by failing to provide plaintiff's seizure medication, stopping the meds without warning and abruptly, and a . . . widespread pattern of repeated actions of providing inadequate medical care to inmates." (*Id.*, ¶ 93). The plaintiff further alleges that "WVDOC/MOCC by and through defendant Rubenstein breached this agreement by failing to provide and enforce and monitor Wexford to make sure Wexford did not stop seizure medication, like plaintiff's, and provide the appropriate and adequate care for the serious medical needs of plaintiff[] and other inmates alike." (*Id.*, ¶ 94). The plaintiff asserts that he is an

---

[6] The actual contract has not been made a part of the record herein.

"intended third party beneficiary" of the contract between the WVDOC and Wexford and, as such, contends that he is entitled to sue for breach of contract.  (*Id.* at 29, ¶ 96).

However, under West Virginia Code § 55-8-12, "in order for a contract concerning a third party to give rise to an independent cause of action in the third party, it must have been made for the third party's sole benefit."  *Woodford v. Glenville State College Housing Corp.*, 225 S.E.2d 671, 674 (W. Va. 1976) (citing *Ison v. Daniel Crisp Corp.*, 122 S.E.2d 553 (W. Va. 1961); *United Dispatch v. Albrecht Co.*, 62 S.E.2d 289 (1950)*); see also Hutchison Coal Co. v. Miller*, 20 F. Supp. 718 (N.D. W. Va. 1937); *Casto v. Dupuy*, 515 S.E.2d 364 (W. Va. 1999).  Here, the plaintiff has not named Wexford or the WVDOC as parties, and he has not demonstrated that the contract between the two was made solely for his benefit.  Thus, Count III of the Amended Complaint fails to state a plausible breach of contract claim under West Virginia law.

Furthermore, with respect to Count IV of the Amended Complaint alleging that defendants Johnson, Warden and Conn have violated the WVCCPA, the plaintiff's conclusory allegations fail to sufficiently allege facts to support a violation of this Act with respect to these defendants and that Act does not appear to apply to any of these defendants under the circumstances presented in the Amended Complaint.  *See* W. Va. Code §§ 46A-6-101-110; *see also State ex rel. Morrisey v. Copper Beech Townhome Communities Twenty-Six, LLC*, 806 S.E.2d 172, 175 (W. Va. 2017) (noting that the CCPA "is a comprehensive attempt on the part of the West Virginia legislature to extend protection to consumers and persons who obtain credit in state.")

Finally, in Count V of the Amended Complaint, which is titled, "Intentional Infliction of Emotional Distress," the plaintiff summarily alleges that all of the defendants either denied him his seizure medication or "condoned or allowed a pattern of inadequate

medical care to continue despite knowing that the treatment is insufficient." (ECF No. 19 at 32, ¶ 108). He provides no other support for this claim. Nonetheless, his allegations do not rise to the level of conduct sufficient to state a plausible claim of intentional infliction of emotional distress under West Virginia law.

In Syllabus Point 6 of *Harless v. First Nat. Bank in Fairmont*, 289 S.E.2d 692, 694 (W. Va. 1982), the Supreme Court of Appeals of West Virginia (the "SCAWV") set forth the elements of an intentional infliction of emotional distress claim as "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Such a claim is also known as the tort of outrage. *Id.* at 703.

> "In order for a plaintiff to prevail on a claim for intentional infliction of emotional distress, four elements must be established. It must be shown: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it."

Syl. pt. 2, *Philyaw v. E. Associated Coal Corp.*, 219 W. Va. 252, 633 S.E.2d 8, 9 (W. Va. 2006) (quoting Syl. Pt. 3, *Travis v. Alcorn Lab.*, 202 W. Va. 369, 504 S.E.2d 419, 421 (W. Va. 1998)). The parties' briefs do not specifically address this claim. Nonetheless, the undersigned proposes that the presiding District Judge **FIND** that the allegations contained in the Amended Complaint do not rise to the high level of outrageousness necessary to support a claim of intentional or reckless infliction of emotional distress and, thus, this claim fails as a matter of law.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that all of the plaintiff's claims against defendant Conn, and his breach of contract, WVCCPA, and intentional infliction of emotional distress claims against the other defendants are unexhausted and fail to state any plausible claim for relief.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Motions to Dismiss filed by defendants Daniel Conn (ECF No. 24) and Donna Warden (ECF No. 35), **DISMISS** all of the plaintiff's state law claims against all of the defendants for failure to state a claim upon which relief can be granted, and leave this matter referred to the undersigned United States Magistrate Judge for additional proposed findings and recommendations concerning the Eighth Amendment claims against defendants Johnson, Rubenstein, and Ballard.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, Chief United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of

Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to the opposing parties and Chief Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

August 13, 2018

Dwane L. Tinsley
United States Magistrate Judge

22