IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

KEITH W.R. LOWE,

        Plaintiff,

v.                                                           CIVIL ACTION NO. 2:17-cv-02345

DR. SHERRY JOHNSON, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Plaintiff, an inmate at the Mount Olive Correctional Complex ("MOCC"), brings this action pursuant to 42 U.S.C. § 1983 against Dr. Sherri Johnson, James Rubenstein, former Commissioner of the West Virginia Division of Corrections, and David Ballard, former Warden of MOCC. (ECF No. 19). Before the Court are Ballard and Rubenstein's Motion to Dismiss, (ECF No. 64), and Dr. Johnson's Motion to Dismiss, (ECF No. 71).

By Standing Order filed in this case on April 13, 2017, this action was referred to United States Magistrate Judge Dwane L. Tinsley for submission of proposed findings and a recommendation for disposition ("PF&R"). (ECF No. 3.) Magistrate Judge Tinsley entered his PF&R on November 21, 2018, recommending that the Court deny the two motions to dismiss and re-refer this matter for further proceedings. (ECF No. 79.) Defendants filed timely objections to the PF&R. (ECF Nos. 80, 81.) For the reasons discussed herein, the Court **SUSTAINS** the objections, (ECF Nos. 80, 81), and **DECLINES** to adopt the PF&R, (ECF No. 79). The Court further **GRANTS** the defendants' motions, (ECF Nos. 64, 71), and **DISMISSES** Plaintiff's

Amended Complaint, (ECF No. 19).

## I. BACKGROUND

Plaintiff has been diagnosed with epilepsy and suffers from seizures as a result thereof. (ECF No. 19 at 10 ¶ 15.) He is provided healthcare from Dr. Johnson through MOCC and was prescribed Dilantin three times a day for his condition. (*Id.* at 11 ¶ 17.) On April 2, 2015, Dr. Johnson terminated Plaintiff's Dilantin prescription, (*id.* at ¶ 21), and prescribed him an alternative anti-seizure medication approximately three weeks later, (*id.* at 16 ¶ 48).

In the interim, Plaintiff had a seizure on April 6, 2015 and again on April 11, 2015. (*Id.* at 12, 13 ¶¶ 26, 33.) Plaintiff notified Ballard and Rubenstein in writing of the discontinuation of his medication and his subsequent seizures. (*Id.* at 11, 12 ¶¶ 23, 29.) He also filed a grievance on April 21, 2015, seeking a Dilantin prescription. (*Id.* at 14 ¶ 37). Plaintiff alleges that the seizures, which caused him to urinate, defecate, vomit, and sustain a head injury, (*id.* at 12, 13 ¶¶ 26, 33), could have been prevented had he received the alternative medication sooner or had his Dilantin prescription continued.

The sole remaining claim in this action is Count I of the Amended Complaint, alleging that Dr. Johnson, Ballard, and Rubenstein were deliberately indifferent to Plaintiff's serious medical need in violation of the Eighth and Fourteenth Amendments to the United States Constitution.[1] Plaintiff alleges that Dr. Johnson violated his rights by stopping his seizure medication "without any warning or without even speaking to Plaintiff" and continuing to deny him medication "even after knowing that Plaintiff had several seizures . . . ." (*Id.* at ¶ 45.) Plaintiff also alleges that

---

[1] The Amended Complaint also asserts a § 1983 supervisory liability claim as well as claims for breach of contract, violations of the West Virginia Consumer Credit and Protection Act, and intentional infliction of emotional distress. (ECF No. 19.) The Court previously dismissed Plaintiff's state law claims against all defendants for failure to state a claim upon which relief can be granted. (ECF No. 74.) In addition, Plaintiff abandoned his supervisory liability claim in response to the pending motions. (ECF No. 76 at 1.)

Ballard and Rubenstein violated his rights by failing to respond to Plaintiff's requests for medication. (*Id.* at 17 ¶ 51.)

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 72(b)(3), this Court "must determine de nova any part of the magistrate judge's disposition that has been properly objected to." The Court is not required to review, under a *de nova* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Failure to file timely objections constitutes a waiver of de nova review. 28 U.S.C. § 636(b)(l); *see also Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). In addition, this Court need not conduct a *de nova* review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the Magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). When reviewing the portions of the PF&R *de nova*, the Court will consider the fact that Plaintiff is acting *pro se*, and his filings will be accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978).

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6). A plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In applying this standard, a court must utilize a two-pronged approach. First, it must separate the legal conclusions in the complaint from the factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged." *Id.* Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

Attached to the Amended Complaint are various documents relating to the efforts Plaintiff made to receive medical treatment. (ECF Nos. 19-1–10.) In addition, Plaintiff's response re-addresses allegations raised in his Amended Complaint and is supported by documents attached thereto. (ECF Nos. 76-1–4.) While, generally, matters outside of the pleading may not be considered on a motion to dismiss, a court may consider the factual allegations in the complaint and any exhibits attached thereto that are authentic and integral to the complaint. *See Blakenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006). These exhibits, therefore, will be considered for purposes of determining the sufficiency of the Amended Complaint. Fed. R. Civ. P. l0(c).

### III. DISCUSSION

The Eighth Amendment to the United States Constitution prohibits prison officials from inflicting "cruel and unusual punishments" by acting with deliberate indifference to a prisoner's serious medical needs. U.S. Const. amend. VIII; *Estelle*, 429 U.S. at 104. A medical needs case

contains both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825 (1994). To satisfy the objective component, an inmate must demonstrate that his medical condition is "objectively 'sufficiently serious.'" *Id.* at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). A serious medical condition is one that has either "been diagnosed by a physician as mandating treatment" or "is so obvious that even a lay person would perceive the need for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotation omitted).

The subjective component of a cruel and unusual punishment claim is satisfied by showing that a prison official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 302–03). Under the requisite degree of culpability, the official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." *Id.* at 844. Rather, the official must know of and disregard "an excessive risk to inmate health." *Id.* at 837.

A finding of deliberate indifference requires more than a showing of mere negligence. *Id.* at 835; *Sosebee v. Murphy*, 797 F.2d 179, 181 (4th Cir. 1986). Rather, to be actionable, the treatment, or lack thereof, "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990); *see also Estelle*, 429 U.S. at 104 (prison doctor intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed can manifest indifference.).

Under this standard, mere "[d]isagreements between an inmate and a physician over the inmate's proper medical care" are not actionable absent exceptional circumstances. *Wright v.*

5

*Collins*, 766 F.2d 841, 849 (4th Cir. 1985). "[A] prisoner does not enjoy a constitutional right to the treatment of his or her choice" so long as the medical treatment provided is adequate. *De'lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013). Moreover, the medical care need not be the best possible care, it only must be "reasonable" care. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (citing *Blanks v. Cunningham*, 409 F.2d 220 (4th Cir. 1969); *Edwards v. Duncan*, 355 F.2d 993 (4th Cir. 1966)). With these principles in mind, the Court turns to the defendants' objections.

   A. *Dr. Johnson's Objections*[2]

Plaintiffs central claim is that Dr. Johnson's delay in providing him with medication was so grossly inadequate as to demonstrate deliberate indifference. Dr. Johnson concedes that she terminated Plaintiff's Dilantin prescription on April 2, 2015 but asserts that the denial was justified based on Plaintiff's prior refusals to undergo required blood testing necessary to administer the medication. (ECF No. 81 at 4, 6.) The Court agrees that, upon closer inspection, Plaintiffs claim amounts to nothing more than a disagreement with his prescribed course of treatment and, thus, fails to state a claim that rises to the level of deliberate indifference.

It is clear that Plaintiff prefers to select his own medication and course of treatment.[3] He concludes he never would have suffered from two seizures in April of 2015 had Dr. Johnson continued his Dilantin prescription or provided alternative medication sooner. (ECF No. 19 at 16

---

[2] Dr. Johnson raises several irrelevant, or otherwise improper, objections to the magistrate judge's PF&R. Specifically, in what appears to be a refiling of her initial motion to dismiss, she maintains that Plaintiff's claims for breach of contract, violations of the West Virginia Consumer Credit and Protection Act, and intentional infliction of emotion distress must fail because, *inter alia*, Plaintiff has failed to exhaust his administrative remedies. (ECF No. 81.) As stated previously, this Court dismissed these claims, pursuant to its September 4, 2018 Memorandum Opinion and Order, (ECF No. 74), which adopted the magistrate judge's PF&R as to the same, (ECF No. 69). Because these objections are moot and fail to focus this Court's attention on the factual and legal issues truly in dispute, the Court declines to address them.

[3] The Amended Complaint states, "[i]t is crystal clear that all Dr. Johnson had to do to prevent the plaintiff's series of seizures was to change his medication to another kind that did not require plaintiff to give blood in the first place." (ECF No. 19 at 16–17 ¶ 48.) Plaintiff further postulates that "[a]brupt discontinuation of Dilantin is never advisable" because "it is in the Barbiturates family and abrupt stoppage will cause withdrawls [sic: withdrawals], can lead to death, and cause the plaintiff, as here to have a series of seizures, which causes seizures to be more intense or develop into longer seizures called status epilepticus." (*Id.* at 21 ¶ 67.)

¶ 46.) The Court notes, however, that Plaintiff suffered a seizure in February of 2015 despite taking Dilantin. (ECF No. 19-6.) In addition, Plaintiff's allegations confirm that his medication was denied during the three-week period in question, at least in part, because of his own conduct. As early as January 29, 2015, Dr. Johnson informed Plaintiff that a Dilantin prescription required periodic blood testing and that a refusal to provide blood must be acknowledged by signing an Against Medical Advice ("AMA") form. (ECF No. 76 at 2; ECF No. 76-1 at 1.) Plaintiff admits that he did not undergo blood testing as advised. (ECF No. 19 at 23 ¶ 76 ("Plaintiff had not gave [sic: did not give] blood for nearly a year, even though that [sic] the plaintiff is required to give blood every 3 months"); ECF No. 76 at 2.) While Dr. Johnson indicated that she would change his medication to one that does not require blood testing, she also "told [Plaintiff] that in the meantime she would go ahead and order blood work" for Dilantin. (*Id.*; ECF No. 76-1 at 1.)

Plaintiff's own admissions reveal that he repeatedly refused to comply with the required blood tests associated with the administration of Dilantin prior to the denial of his medication. Despite Plaintiff's noncompliance, Dr. Johnson continued to monitor Plaintiff's seizure disorder through ordered blood work and treatment discussions. During the three-week period, Dr. Johnson provided medical attention to Plaintiff on at least one other occasion. The Amended Complaint indicates that while Plaintiff's appointment was regarding an unrelated injury, she, nevertheless, discussed with Plaintiff his course of treatment for seizures. (ECF No. 19 at 13 ¶ 30 (Dr. Johnson informed Plaintiff that "he would not receive his medication until he gave blood" and that "she would send a nurse down the next morning to get his blood.").) Although Dr. Johnson terminated Plaintiff's anti-seizure medication, she had an important medical reason for doing so and informed Plaintiff of such. (*Id.*) Moreover, Dr. Johnson accommodated Plaintiff's prior refusals to undergo blood testing by providing alternative medication. (*Id.* at 16 ¶ 48.) Unlike Dilantin, the alternative

7

medication appears effective as the Amended Complaint makes no reference to any seizures since Plaintiff was prescribed the new medication. When liberally construing these allegations, the Court cannot reasonably infer that Plaintiff received treatment at the hands of Dr. Johnson that was "so inadequate as to shock the conscience." *Miltier*, 896 F.2d at 851.

Plaintiff's response brief further undermines his claim. His response indicates that Dr. Johnson ordered blood work for Plaintiff on at least two occasions after Plaintiff suffered a seizure. (ECF No. 76 at 3 (April 9, 2015 and April 11, 2015).) Consistent with Dr. Johnson's instructions, a nurse informed Plaintiff on April 11, 2015 and April 13, 2015 that she would draw his blood. (*Id.*; ECF No. 76-1 at 2–3; ECF No. 19 at 14 ¶ 35.) Though Plaintiff alleges that a nurse never drew his blood on either date, the Amended Complaint makes no allegations that Dr. Johnson interfered or prevented Plaintiff from undergoing the necessary blood work to support an inference of deliberate intent. Whether an unidentified nurse, who is not named in the Amended Complaint, neglected to draw Plaintiff's blood as directed by Dr. Johnson is irrelevant to Dr. Johnson's state of mind.

Plaintiff's contentions with his course of treatment and medication fall short of a constitutional violation. *See United States v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011); *Jackson v. Sampson*, 536 Fed.Appx. 356, 357 (4th Cir. 2013) (finding a physician's "decision not to authorize the particular treatment program [Plaintiff] requested . . . amounts to a disagreement with his course of treatment that is not cognizable under the Eighth Amendment."). At best, Plaintiff's complaints about Dr. Johnson's exercise of medical judgment, which the Court is reluctant to second guess, may give rise to a negligence claim. *See Gobert v. Caldwell*, 463 F.3d 339, 352 (5th Cir. 2006) (concluding that, while a one-week lapse in medication may amount to negligence, deliberate indifference to a serious medical need could not be sustained).

For these reasons, the Court cannot determine that Plaintiff's allegations state a plausible claim for relief. *See Miltier*, 896 F.2d at 851–852 ("mere negligence; or malpractice does not violate the Eighth Amendment."); *Webster v. Jones*, 554 F.2d 1285 (4th Cir. 1977) (negligence is insufficient to demonstrate deliberate indifference to a serious medical need). Accordingly, the Court **SUSTAINS** Dr. Johnson's objections, (ECF No. 81), and **DISMISSES** Plaintiff's deliberate indifference claim against her.

*B. Ballard and Rubenstein's Objections*

As to Ballard and Rubenstein, Plaintiff alleges that these defendants exhibited deliberate indifference to his serious medical need by failing to address his complaints regarding the termination of his medication and ensuring that he receive anti-seizure medication. The magistrate judge finds that, while the Eleventh Amendment to the United States Constitution bars a claim against Ballard and Rubenstein in their official capacities, the Amended Complaint does state a plausible Eighth Amendment claim against these defendants in their individual capacity. (ECF No. 79 at 4, 10.) Ballard and Rubenstein's objection rests on the assertion that they cannot be held liable for failing to intervene with Plaintiff's medical care and override Dr. Johnson's professional judgment. (ECF No. 80 at 5–6.) The PF&R, however, finds Plaintiff's claims sufficient to survive a motion to dismiss, stating that "there is insufficient evidence of record concerning the judgment of the medical provider or that Ballard and Rubenstein were actually relying on such judgment in failing to intervene." (ECF No. 79 at 10.) This Court respectfully disagrees.

The PF&R accurately explains, and Plaintiff does not refute, that *respondeat superior* is not an acceptable basis for liability under § 1983. *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Vinnedge*, 550 F.2d at 928. Instead, supervisory officials may be liable for the actions of their subordinates where the supervisor, by his own conduct, was deliberately indifferent to or

tacitly authorized prior constitutional violations. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994), *cert. denied*, 513 U.S. 813 (1994). Such liability is not based upon notions of *respondeat superior*, but upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Id.* at 798 (quoting *Slakan v. Porter*, 737 F.2d 368, 372–73 (4th Cir. 1984)).

To establish a claim of deliberate indifference against a non-medical prison official, an inmate must show that "( 1) the supervisory defendants failed promptly to provide an inmate with needed medical care, (2) that the supervisory defendants deliberately interfered with the prison doctors' performance, or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." *Miltier*, 896 F.2d at 854. A plaintiff cannot establish supervisory liability merely by showing that a subordinate physician was deliberately indifferent to his needs. *Id.* Rather, the plaintiff must show that a supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practice. *Id.* In reviewing claims of medical care, supervisors are entitled to rely on the professional judgment of trained medical personnel. *Id.* (stating that supervisory prison officials may be found to have been deliberately indifferent by intentionally interfering with a prisoner's medical treatment ordered by such personnel).

Plaintiff's discursive pleading along with the exhibits attached thereto reveal that Ballard and Rubenstein were anything but deliberately indifferent to his serious medical need. Neither Ballard nor Rubenstein are medically trained physicians. As non-medical personnel, they were justified in believing that the medical judgments of Dr. Johnson, qualified by education and experience, adequately met Plaintiff's medical need. Plaintiff does not allege that he was no longer receiving medical care for seizures, only that his medication was discontinued. Deliberate

indifference cannot be inferred simply because they failed to respond directly to Plaintiff's request for medication. *See Shakka v. Smith*, 71 F.3d 162 (4th Cir. 1995) (prison officials lacked the authority to contravene the prison psychologist's instructions and order that a wheelchair, which constituted a serious medical need, be returned to an inmate); *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (non-medical professionals were not deliberately indifferent for failing to respond to an inmate's complaints when the prisoner ostensibly was under care of medical experts).

Contrary to Plaintiff's allegations, the record reveals that Ballard and Rubenstein investigated and participated in an administrative review of Plaintiff's complaint. In reply to Plaintiff's grievance attached to the Amended Complaint, the medical director at MOOC explains that "the Dilantin was discontinued because [Plaintiff] was noncompliant with providing blood for lab analysis that is required to monitor administration of this specific medication. This was explained to you." (ECF No. 19-2.) The reply further states that Plaintiff was prescribed alternative medication that does not require blood samples to be drawn. (*Id.*) The grievance form notably reflects that both Ballard and Rubenstein reviewed and affirmed the denial of Plaintiff's grievance.[4]

Because the factual allegations cannot support a finding that these defendants were deliberately indifferent to a serious medical need, Plaintiff fails to state a viable Eight Amendment claim against Ballard and Rubenstein. Accordingly, the Court **SUSTAINS** Ballard and Rubenstein's objections, (ECF No. 80), and **DISMISSES** Plaintiff's claims against them.

---

[4] To the extent that Plaintiff may be asserting that Ballard and Rubenstein were deliberately indifferent by denying his administrative grievance, such claim is without merit. *See Lowe v. Matheney*, No. 2:13-cv-22416, 2015 WL 5795867 at *9 (S.D. W. Va. Sept. 30, 2015) (inadequacy of allegations involving supervisory liability claim based upon denial of grievances).

## IV. CONCLUSION

For these reasons, the Court **SUSTAINS** the defendants' objections, (ECF Nos. 80, 81), and **DECLINES** to adopt the PF&R, (ECF No. 79). The Court further **GRANTS** Ballard and Rubenstein's Motion to Dismiss, (ECF No. 64), **GRANTS** Dr. Johnson's Motion to Dismiss, (ECF No. 71), **DISMISSES** Plaintiff's Amended Complaint, (ECF No. 19), and **DIRECTS** the Clerk to remove this case from the Court's docket.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: February 14, 2019

THOMAS E. JOHNSTON, CHIEF JUDGE