## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

KEITH W.R. LOWE,

       Plaintiff,

v.                                   Case No. 2:17-cv-02345

DR. SHERRY JOHNSON, DAVID BALLARD,
and JAMES RUBENSTEIN,

       Defendants.

### PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable Thomas E. Johnston, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  Pending before the court are a Motion for Summary Judgment filed by David Ballard and James Rubenstein (ECF No. 114) and a Motion for Summary Judgment filed by Dr. Sherri Johnson (ECF No. 116).  For the reasons stated herein, it is respectfully **RECOMMENDED** that Defendants' motions for summary judgment be **GRANTED** and that this matter be dismissed from the docket of the court.

    *I.*      *FACTUAL BACKGROUND AND RELEVANT PROCEDURAL HISTORY*

This matter is proceeding only on the Eighth Amendment claims against Defendants David Ballard, James Rubenstein, and Dr. Sherri Johnson contained in Count One of Plaintiff's verified Amended Complaint (ECF No. 19).  Following a period for discovery, Defendants filed the pending motions for summary judgment (ECF Nos.

114 and 116).  Pursuant to the holding of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of his right and obligation to respond to the motions and of the evidence and materials upon which he could rely to rebut Defendants' evidence, as provided in Rule 56 of the Federal Rules of Civil Procedure.  (ECF No. 92).  Plaintiff responded to both motions (ECF Nos. 118 and 119) and Defendants filed reply briefs (ECF Nos. 120 and 121).  Without authorization of the court, Plaintiff submitted a "supplemental reply" (hereinafter "sur-reply") (ECF No. 122), to which Defendants have not objected.[1]  The motions are fully briefed and ripe for adjudication.

The following facts are derived from the Plaintiff's verified Amended Complaint, which may be considered the equivalent of an affidavit to overcome summary judgment,[2] and the exhibits attached thereto, as well as the exhibits offered with Defendants' motions for summary judgment and other related briefing, which will be identified and addressed herein as necessary.  The undersigned has also considered an Affidavit previously submitted by Plaintiff, which was again attached to his sur-reply. (ECF No. 76, Ex. 1; ECF No. 122 at 4-6, Ex. C).

Plaintiff, who is an inmate at the Mount Olive Correctional Complex ("MOCC"), suffers from epilepsy and has a history of seizures.  (ECF No. 19 at 10 ¶ 15).  He has been treated by Dr. Sherri Johnson ("Johnson"), who is employed by Wexford Health Sources, Inc., the contracted medical provider for the West Virginia Division of Corrections ("WVDOC").  (*Id*. at 11, ¶ 17).

---

[1] The undersigned notes that the Declaration contained in Plaintiff's sur-reply (ECF No. 122 at 2, Ex. A) incorrectly lists the dates therein as occurring in 2017, not 2015, as supported by the other evidence of record.

[2] "[A] *verified* complaint is the equivalent of an opposing affidavit for summary judgment purposes when the allegations contained therein are [sworn under penalty of perjury to be true and are] based on personal knowledge." *Williams v. Griffin,* 952 F.2d 820, 823 (4th Cir.1991); *see also* 28 U.S.C. § 1746; Fed. R.Civ.P. 56(c)(4).

Plaintiff was prescribed Dilantin three (3) times a day for his condition. (*Id.*) As noted by Defendants' proposed expert witness report, Dilantin is an anticonvulsant medication which requires regular blood tests due to it having a very narrow therapeutic margin. *See* Independent Medical Records Review Report by neurosurgeon Constantino Amores, MD, FACS, CIME, dated October 28, 2020. (ECF No. 114, Ex. A at 3; ECF No. 116, Ex. B at 3). A low level of Dilantin in the blood puts the patient at risk for seizure recurrence, whereas an overdosage can result in liver and kidney toxicity. (*Id.*) Therefore, regular blood testing is necessary for the safe administration of the drug. (*Id.*)

According to Plaintiff's Affidavit and documents attached thereto, on or about January 29, 2015, Plaintiff advised Johnson that he had a needle phobia and had trouble giving blood. (ECF No. 76, Exs. 1 and 3). Thus, he apparently refused to undergo blood testing; however, from the record before the court, it is unclear when he last gave blood for the purpose of monitoring the effects of the Dilantin.[3] The January 29, 2015 Physicians' Order attached to Plaintiff's Affidavit indicates that Johnson instructed that Plaintiff execute an "AMA" (against medical advice) form if he refused to submit to bloodwork the following week, but apparently he continued to be given Dilantin. (ECF No. 76, Ex. 3). Plaintiff later acknowledged that he had a "pretty bad seizure" on or about February 14, 2015, while he was taking Dilantin, but contended that the "medication was clearly controlling my seizures for the most part." (ECF No. 19 at 11, ¶ 19 and Ex. 7; ECF No. 114, Ex. B).

---

[3] The record before the court contains only two pages of Plaintiff's medical records consisting of Physician's Orders for January 29, 2015, and the period between April 16, 2015, and June 2, 2015. (ECF No. 76, Ex. 3; ECF No. 114, Ex. A). Plaintiff's Amended Complaint suggests that it had been "nearly a year since he had given blood." (ECF No. 19 at 23, ¶ 76).

On April 2, 2015, Plaintiff's Dilantin prescription was terminated, and Johnson did not immediately prescribe a replacement medication.  Plaintiff's verified Amended Complaint asserts that, prior to this discontinuance, Johnson never told him that she would stop his medication if he did not submit to blood tests.  (ECF No. 19 at 12, ¶ 24; ECF No. 76, Ex. 1 at 1, ¶ 1; ECF No. 122 at 4-6, Ex. C, ¶ 1).  However, his Affidavit suggests that he had been told about Keppra as an alternative medication that would not require blood testing.  (ECF No. 76, Ex. 1 at 1, ¶ 1; ECF No. 122 at 4, Ex. C, ¶ 1).  Plaintiff states that he submitted a sick call slip on April 3, 2015, requesting to speak to Dr. Johnson to try to get his seizure medication.  (ECF No. 19 at 12, ¶ 25).  This sick call request is not part of the record before the court.

On April 5, 2015, Plaintiff wrote to James Rubenstein ("Rubenstein"), who was then the Commissioner of the WVDOC, asking for his help after Johnson cut off his medication.  He states that he had a seizure on the previous night and fears that he will suffer additional seizures.  (ECF No. 19, Ex. 4; ECF No. 114, Ex. C).  On April 6, 2015, Plaintiff alleges that he suffered another seizure after the Dilantin was discontinued. (ECF No. 19 at 12, ¶ 26; ECF No. 76-1 at 1, ¶ 2; ECF No. 122 at 4, ¶ 2).  On April 7, 2015, Plaintiff wrote a letter to David Ballard ("Ballard"), who was then the Warden of MOCC, requesting that he direct Johnson to reinstate his Dilantin prescription. (ECF No. 19 at 12 ¶ 29 and Ex. 7; ECF No. 114, Ex. B).  Plaintiff also completed another sick call request asking to be seen by Johnson about the discontinuance of his medication and his fear that he would have more seizures.  (ECF No. 19, Ex. 5).

According to Plaintiff, on April 9, 2015, he was seen by Johnson for other medical issues, but, at that time, he also addressed the discontinuance of Dilantin with her and informed her that he had a seizure on April 6, 2015.  Plaintiff states that he agreed to

undergo blood testing if she would reinstate his Dilantin prescription, yet Johnson did not order blood work or reinstate the Dilantin prescription at that time.  (ECF No. 19 at 12-13, ¶ 30; ECF No. 76, Ex. 1 at 2, ¶ 3; ECF No. 122 at 5, Ex. C, ¶ 3).  Plaintiff states that Johnson told him that "she ran the show," and "she wasn't there to draw his blood or talk about seizures."  (*Id.*)  Plaintiff further states that Johnson told him she would send a nurse down the following morning to draw his blood; however, no nurse ever came to do so.  (*Id.*)

On April 10-11, 2015, Plaintiff allegedly had another seizure while sleeping in his cell and suffered apparent physical injuries.  (ECF No. 19 at 13-14, ¶ 33).  Specifically, he states that, on April 11, 2015, he woke up in a puddle of blood and had defecated on himself and nurses' notes (which have not been produced by any party) stated that he had a seizure, fell out of bed, and struck his head and face on the concrete floor or steel stool in his cell.  (*Id.*)  Pictures of the injuries sustained by Plaintiff were taken at that time.  (ECF No. 19 at 14, ¶ 34 and Ex. 8).

According to Plaintiff's Affidavit, on April 11, 2015, and again on April 13, 2015, nurses came to his cell and said they would be back in the morning to draw his blood, but no one ever came and his blood was never drawn.  (ECF No. 76, Ex. 1 at 2-3, ¶¶ 5 and 6; ECF No. 122 at 5-6, Ex. C, ¶¶ 5 and 6).  On April 14, 2015, Plaintiff submitted another sick call request indicating that he had suffered a seizure on April 10, 2015, and that he had spoken with Johnson and agreed to undergo blood testing, but no one had come to draw his blood.  (ECF No. 19, Ex. 9 at 20).  Plaintiff does not allege that he suffered any additional seizures after April 11, 2015.

The Physician's Orders that are part of the record before the court indicate that, on April 16, 2015, Johnson prescribed 500 mg of Keppra twice a day for 180 days.  (ECF

No. 116, Ex. A).  Defendants have provided a proposed expert report indicating that Dr. Constantine Amores reviewed 33 pages of Plaintiff's medical records.  (ECF No. 114, Ex. A; ECF No. 116, Ex. B).  Dr. Amores opined that it was "reasonable" to discontinue the Dilantin prescription and to prescribe Keppra.  (ECF No. 114, Ex. A).

Dr. Amores' report states that Johnson prescribed Keppra to Plaintiff on April 11, 2015.  (*Id.*)  However, Dr. Amores did not attach to his report, and Defendants have not provided, any medical records confirming that fact, which is also inconsistent with certain representations made in Johnson's statement of undisputed facts in her memorandum of law and the Physician's Order stating that Keppra was prescribed on April 16, 2015.  (ECF No. 117 at 3 and Ex. A).  Plaintiff contends that he did not start receiving the Keppra until about April 21, 2015.  (ECF No. 76, Ex. 1, at 3, ¶ 7; ECF No. 122 at 6, Ex. C, ¶ 7).[4]

According to their own affidavits, because they had no medical training or expertise enabling them to properly address medical or pharmacological issues, Defendants Ballard and Rubenstein regularly deferred any inmate grievances or complaints pertaining to such treatment for handling by the contracted medical professionals employed by Wexford Health Sources, Inc. ("Wexford").  (ECF No. 114, Exs. D and E).  Both Ballard and Rubenstein attest that the letters they received from Plaintiff regarding the discontinuation of his anti-seizure medication were, in accordance with such practice, forwarded on to Wexford personnel to be handled by medical professionals having the expertise, qualifications, and training to properly make such decisions.  (*Id.*)  Subsequently, when Ballard and Rubenstein were presented with

---

[4] A grievance filed on April 21, 2015 suggests that, at that time, Plaintiff had not been given any medication since April 2, 2015.  (ECF No. 19, Ex. 2).

his grievance concerning the discontinuance of his medication, Plaintiff had been prescribed his new medication and, thus, no intervention was then necessary.

## II.    STANDARD OF REVIEW

In evaluating summary judgment motions, Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought.   The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.   The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a) (2010).   Material facts are those necessary to establish the elements of a party's cause of action.   *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim.   *Celotex,* 477 U.S. at 322-23.   The moving party has the burden of establishing that there is an absence of evidence to support the nonmoving party's claim.   *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

Once the moving party demonstrates such a lack of evidence, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial.   *Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986).   "A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements."   *Brown v. Showboat Altantic City Propoco, LLC*, No. 08-5145, 2010 WL 5237855, *2 (D.N.J. Dec. 16, 2010) (citing *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001).   Rather, "the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party."   *Id.*

7

(citing *Anderson*, 477 U.S. at 256-57).   Accordingly, summary judgment will generally be granted unless a reasonable jury could render a verdict for the non-moving party on the evidence presented.  *Anderson,* 477 U.S. at 247-48.

A court must not resolve disputed facts or weigh the evidence and may not make determinations of credibility.  *Russell v. Microdyne Corp., 65 F .3d* 1229, 1239 (4th Cir. 1995); *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and to have all internal conflicts resolved in his or her favor.  *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).  However, the party opposing the motion may not rely upon mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial.  *Sprenkle v. Hartford Life Ins. Co.,* 84 F. Supp.2d 751 (N.D.W. Va. 2000).

### III.   DISCUSSION

Plaintiff claims that Defendants' deliberate indifference to his serious medical needs has violated his rights under the Eighth Amendment's guarantee against cruel and unusual punishment.  He further claims that, "as a direct and proximate result of [Defendants'] deliberate indifference to [his] serious medical needs and failure to give [him] his (Dilantin) seizure medication, [he] suffered physical and mental, emotional injuries." (ECF No. 19 at 14, ¶ 33).

### A.     Eighth Amendment standards

In *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must

provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" This is a low standard.  The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'" *Id.* at 833.

Moreover, to sustain an Eighth Amendment claim, a prisoner must show two things: (1) "the deprivation must be, objectively, 'sufficiently serious;'" that is, "denial of 'the minimal civilized measure of life's necessities;'" and (2) the prison official had a "'sufficiently culpable state of mind;'" that is, "'deliberate indifference' to inmate health or safety."  *Id.* at 834. (Citations omitted.)  The Supreme Court rejected an argument that an objective test of deliberate indifference be established.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

As a contracted health care provider for the WVDOC, Johnson is subject to the requirements of the Eighth Amendment. *West v. Atkins*, 487 U.S. 42, 54 (1988) (physician employed by state to provide medical services to state prison inmates acted under color of state law for purposes of § 1983 when undertaking his duties in treating petitioner's injury).   "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness*." Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990); *see also*

*Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) (collecting cases). "Serious medical needs" are those which have been diagnosed by a physician as mandating treatment or that are so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Gaudreault v. Munic. of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990).

> Deliberate indifference may be demonstrated by either actual intent or reckless disregard. *See Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985). A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. *See id.* Nevertheless, mere negligence or malpractice does not violate the Eighth Amendment. *See* [*Estelle v. Gamble*, 429 U.S. 97, 106 (1976)].

*Miltier*, 896 F.2d at 851-852.

The burden of demonstrating deliberate indifference to a serious medical need is very high. It is well-settled that:

> A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. *See Farmer*, 511 U.S. at 832-35; *Sosebee v. Murphy*, 797 F.2d 182-83 (4th Cir. 1986); *Loe v. Armistead*, 582 F.2d 1291, 1296-97 (4th Cir. 1978).

*Rush v. VanDevander*, 2008 WL 495651 (W.D. Va., Feb. 21, 2008); *Banks v. Green Rock Corr. Ctr. Med. Dep't*, 2007 WL 2903673 (W.D. Va., Oct. 3, 2007). However, negligence is not sufficient to demonstrate deliberate indifference to a serious medical need. *See Webster v. Jones*, 554 F.2d 1285 (4th Cir. 1977).

Likewise, disagreements between a health care provider and the inmate over a diagnosis and the proper course of treatment are not sufficient to support a deliberate indifference claim, and questions of medical judgment are generally not subject to judicial review. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*,

528 F.2d 318, 319 (4th Cir. 1975).  As noted by the Fourth Circuit, an inmate is not entitled to unqualified access to health care and treatment may be limited to what is medically necessary and not "that which may be considered merely desirable" to the inmate.  *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977). "[A] prisoner does not enjoy a constitutional right to the treatment of his . . . choice[,]" but rather he is entitled to "reasonable" and "adequate" medical care.  *See De'lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013); *See also Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977).

**B.    The claim against defendant Johnson.**

In the instant case, Plaintiff contends that Johnson acted with deliberate indifference when she terminated his Dilantin without warning.  He further claims that, despite his repeated requests and willingness to undergo the necessary bloodwork, Johnson failed to restore his Dilantin or replace it with alternative medication for approximately three weeks, during which time he suffered at least two seizures resulting in physical injury.  Plaintiff further contends, without any other support therefore, that Johnson did not discontinue his medication because he refused to submit to blood work, but, rather, because she had argued with Plaintiff over some unrelated medical issues. (ECF No. 76, Ex. 1 at 2, ¶ 3; ECF No. 122 at 5, Ex. C, ¶ 3).

Johnson's motion documents assert that she is entitled to summary judgment because Plaintiff has failed to offer any "concrete evidence" that the cessation of his Dilantin prescription and the alleged delay in his receipt of a substitute medication proximately caused the seizures he claimed to have had in the interim.  Johnson asserts that, without more, Plaintiff's speculation that the delay in changing his medication caused a known risk of substantial harm, that she disregarded, is insufficient to give rise to a *genuine* issue of material fact.  Her memorandum further states:

11

> In the present case, Dr. Johnson has presented evidence that the medical care she provided to the Plaintiff which is at issue in this civil action was reasonable and adequate, and that her medical treatment of the Plaintiff was not unreasonable or grossly inadequate as is required to sustain a deliberate indifference claim against her. More specifically, Dr. Amores has performed an independent expert medical review of the Plaintiff's pertinent medical records and Dr. Johnson's medical treatment of the Plaintiff which is at issue in this action. * * * Dr. Amores clearly opines that it was reasonable for Dr. Johnson to discontinue the Plaintiff's Dilantin due to the Plaintiff's refusal to submit to blood testing, and it was reasonable for Dr. Johnson to prescribe Keppra as an alternative drug which does not require blood testing. Further, Dr. Amores cited no issues in his report with the timing between the discontinuance of the Plaintiff's Dilantin and Dr. Johnson's prescription of Keppra as an alternative, nor did he opine that the timing between Dilantin and Keppra prescriptions was not reasonable.

(ECF No. 117 at 9). Thus, Johnson contends that she has presented uncontroverted "substantial evidence" that her treatment of Plaintiff was "reasonable medical care" and was not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" as required to constitute "deliberate indifference." (*Id.* at 9-10) (citing *Miltier*, 896 F.2d at 851).

> Johnson further contends:

> The Plaintiff has presented no actual evidence to support his contention that the discontinuance of his Dilantin prescription was not "reasonable" medical care or was otherwise improper to such a level that it constituted deliberate indifference. The Plaintiff has presented no actual evidence to support his contention that the timing between the discontinuance of his Dilantin prescription and the commencement of his Keppra prescription was not "reasonable" medical care or was otherwise improper to such a level that it constituted deliberate indifference. Further, the Plaintiff has presented no actual evidence to support his contention that the discontinuance of his Dilantin prescription and the passage of time before the commencement of his Keppra prescription proximately caused his alleged seizures on April 6 and/or April 11, 2015.

(*Id.* at 11). Additionally, she asserts that Plaintiff cannot overcome the fact that he suffered a seizure just a few months before this, while taking Dilantin, and, thus, he can do no more than speculate that the cessation of the Dilantin proximately caused his

additional seizures.  (*Id.*)  Consequently, Johnson maintains that there is an absence of actual evidence demonstrating that she both knew of, and disregarded, an objectively serious medical need or substantial risk of harm to Plaintiff and, therefore, Plaintiff has not met his high burden of establishing that she acted with deliberate indifference.  (*Id.* at 12-13).

Plaintiff, on the other hand, contends that his epilepsy and seizure disorder obviously constitute a serious medical need and that the sudden cessation of the same and failure to immediately prescribe a substitute medication presents an obvious risk of harm of which even a lay person would be aware.  (ECF No. 119 at 2-3, 6).  Thus, Plaintiff contends that "a jury could reasonably infer that failing to treat [his] seizure disorder for nearly three weeks creates a substantial risk that serious bodily injury would [and did] result" and that, taking the evidence in the light most favorable to him, there are genuine disputes of fact as to whether the "intentional" and "abrupt" stoppage and delay in providing him any seizure medication for nearly three weeks created a substantial risk of harm, which Johnson disregarded.  (*Id.* at 3-4).

Johnson's reply brief again asserts that "Plaintiff offers nothing more than his own layperson speculation to show specific facts that amount to a genuine issue for trial or otherwise support his claim for deliberate indifference."  (ECF No. 121 at 5).  She emphasizes that Plaintiff "has no medical expert opinion or other evidence aside from his own conclusory layperson opinion[.]" (*Id.* at 8).  She further repeatedly contends that "Plaintiff's speculative and unsubstantiated claim that stopping the Dilantin and not immediately starting another prescription was the cause of his alleged seizure(s)" is belied by the fact that he had a "pretty bad seizure" just a few months this before while taking Dilantin.  (*Id.* at 5-8).  Johnson underscores that Plaintiff has the burden of

proving all of the elements of his Eighth Amendment claim with actual evidence and that he has failed to meet that burden.  (*Id.* at 9-13).

The decision of another judge of this court is instructive here.  In *Porter v. Clark*, No. 3:14-cv-26583, 2016 WL 205492, *1 (S.D.W. Va. Jan. 15, 2016) (Chambers, C.J.), the court granted summary judgment to the defendants on an Eighth Amendment deliberate indifference claim because the plaintiff had offered no evidence to establish that any failure to provide him medication proximately caused his medical condition and, thus, failed to sufficiently rebut the defense's expert's evidence.  Specifically, Judge Chambers found:

> Plaintiff must present evidence to demonstrate causation beyond his personal belief and the timing of the events.  Merely having Plaintiff testify that he was not given his medication for a period of time and he thinks it caused his medical problem is insufficient evidence for a reasonable juror to return a verdict in his favor.  Plaintiff must offer more than a mere "scintilla of evidence" in support of his position. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Here, Plaintiff's self-servicing statements require the jury to speculate, as he does, that his medical problems were proximately caused by Defendants, which is improper.  Therefore, as Plaintiff has presented no other evidence, the Court **FINDS** there is no genuine issue as to any material fact and Defendants are entitled to judgment as a matter of law.

*Id.* at *2.  Similarly, here, Plaintiff offers no evidence beyond his own speculative belief that the cessation of one medication and a brief delay in starting a substitute medication caused him to have seizures during that time.  Such conjectural evidence, without more, is insufficient to establish the requisite proximate causation to support an Eighth Amendment claim and amounts to nothing more than a disagreement over the proper course of treatment.

Accordingly, even taking the facts of record in the light most favorable to Plaintiff, there is an absence of evidence establishing that Johnson disregarded a known

risk of harm to Plaintiff or that his treatment was so grossly incompetent, inadequate, or excessive as to shock the conscience or intolerable to fundamental fairness.  Moreover, Plaintiff has failed to establish that Johnson's conduct proximately caused his alleged injuries.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that there are no genuine issues of material fact and that Johnson is entitled to judgment as a matter of law on Plaintiff's Eighth Amendment claim.

### C.  Claims against defendants Ballard and Rubenstein.

Plaintiff further contends that, after receiving his letters, Ballard and Rubenstein clearly knew of the substantial risk of harm to his health from the termination of his medication, but failed to respond and intervene in Johnson's medical decisions, amounting to their own deliberate indifference to his serious medical needs.  (ECF No. 19 at 18-19).  However, Ballard and Rubenstein contend that Plaintiff has failed to demonstrate that their conduct resulted in any violation of his Eighth Amendment rights.  (*Id.*)

Specifically, Ballard and Rubenstein's memorandum in support of their motion states:

> Despite Plaintiff's allegations to the contrary, deliberate indifference cannot be inferred simply because Defendants Ballard and Rubenstein did not directly respond to his letters addressed to them regarding his prescription for Dilantin being discontinued.  Ballard attests that because the letter addressed to him from the Plaintiff pertained to a medical and/or pharmacological decision, the letter was forwarded on to the medical director for Wexford Health Sources, Inc. for handling by a medical professional with the expertise, qualifications, and training to properly make such decisions. (See Exhibit E at ¶ 8-9.)  Ballard further provides that, with regard to Plaintiff's concerns expressed regarding the discontinuation and change in medication, he relied on the medical expertise, qualifications, and training of Wexford medical personnel to make decisions and respond appropriately to Plaintiff's concerns. (See Exhibit E at ¶ 10.)  Similarly, Rubenstein has entered a sworn affidavit stating that because the letter addressed to him from the Plaintiff

> pertained to a medical and/or pharmacological issue, the letter was forwarded for handling onto Wexford Health personnel having the expertise, qualifications, and training to properly handle such an issue. (See Exhibit D at ¶ 8-9.) Rubenstein further attested that he relied on the medical expertise, qualifications, and training of Wexford medical personnel to properly respond to the Plaintiff's concerns regarding the change in his medication. (See Exhibit D at ¶ 10.)

(ECF No. 115 at 9).

These defendants further assert that, not only were they entitled to rely on the judgment of trained medical professionals under these circumstances, but they were required to do so. *See Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995); *See also Miltier*, 896 F.2d at 854. (*Id.* at 9-10). Thus, they contend that "the evidence of record clearly demonstrates that they referred the medical issue to trained medical personnel for handling and relied on the professional judgment of trained medical personnel to properly address the issue[.]" (*Id.*) Additionally, Ballard and Rubenstein assert that the evidence of record demonstrates that, after Plaintiff filed his grievance concerning the discontinuation of the Dilantin, they appropriately reviewed and considered the grievance to ensure that it was properly addressed by medical personnel, and determined that the new medication had been prescribed by that time. (*Id.* at 10). Consequently, these defendants assert that there is an absence of evidence to demonstrate that they acted with deliberate indifference and that they are entitled to judgment as a matter of law on Plaintiff's Eighth Amendment claims.

Similar to Defendant Johnson, Ballard and Rubenstein, relying on the expert opinion of Dr. Amores, also assert that there is no evidence of deliberate indifference to a serious medical need because the change in Plaintiff's medication was reasonable under the circumstances. They further assert:

16

> Whereas [in reversing the District Court's dismissal of these Eighth Amendment claims at the motion to dismiss stage] the Fourth Circuit too[k] issue [with] the time delay between the discontinuation of Dilantin and the Plaintiff being prescribed the alternative anti-convulsant Keppra, there is no evidence of record demonstrating that the time gap between the two (2) [was] unreasonable or was even unnecessary. (See ECF No. 88 at 5). Dr. Amores after having reviewed the Plaintiff's full medical file did not take issue with the timing of the discontinuation of Dilantin and the replacement with Keppra in his report. (See Exhibit A).
>
> It is apparent that the Plaintiff prefers to select his own course of treatment and that his main contention here is that Dr. Johnson failed to provide him with the medical treatment of his choice. (See ECF No. 19 at 16 – 17 ¶ 48). Although Dr. Johnson terminated his Dilantin prescription, she explained her reasons for doing so and provided alternative medication that did not require him to undergo blood testing. (ECF No. 19 at 13 ¶ 30; 16 ¶ 48). As discussed above, "a prisoner does not enjoy a constitutional right to the treatment of his . . . choice", but rather he is entitled to "reasonable" medical care. See De'lont[a], 708 F.3d at 526; *See also Vinnedge*, 550 F.2d at 928. The evidence of record, specifically Dr. Amores' expert medical report, clearly indicates that the medical care provided to the Plaintiff was in fact reasonable, and therefore any alleged need on the part of prison officials to intervene in medical care provided to the Plaintiff is thereby eliminated. Accordingly, Defendants Ballard and Rubenstein are entitled to summary judgment with regard to any and all remaining claims for deliberate indifference asserted against them.

(ECF No. 115 at 12-13).

Plaintiff's response to Ballard and Rubenstein's motion for summary judgment asserts that their ability to rely upon the medical judgment of a contracted medical provider does not relieve them of their obligation to ensure that inmates within their custody are provided with adequate medical care. (ECF No. 118 at 3-4). He further asserts that his serious medical needs went untreated and amounted, not to a disagreement over the best medical treatment, but to no medical care at all, and that Ballard and Rubenstein knew this (including the fact that he suffered several seizures after the medication had been stopped). (*Id.* at 4-6). Thus, he contends that Ballard

and Rubenstein had actual knowledge of a substantial risk of harm to him and that their failure to act constituted deliberate indifference to the same. (*Id*. at 6-8).

Ballard and Rubenstein's reply again emphasizes that they did not "do nothing" or "fail to act," but, rather, referred the matter to the medical personnel with the expertise to address the serious medical needs and appropriate care of Plaintiff. (ECF No. 120 at 3-5). They further assert that, in response to Plaintiff's grievance, they followed up and determined that Plaintiff had received reasonably adequate and appropriate treatment, which is supported by the undisputed expert opinion of Dr. Amores. (*Id*. at 6-11). Thus, Ballard and Rubenstein again assert that there is an absence of evidence to establish that they acted with deliberate indifference and, therefore, they are entitled to judgment as a matter of law on Plaintiff's claims against them. The undersigned agrees.

In accordance with the clearly established authority directing that non-medical personnel may rely on the judgment of trained medical professionals with respect to reasonable and appropriate standards of care, and the undisputed evidence of record concerning their actions, the undersigned proposes that the presiding District Judge **FIND** that there is an absence of evidence from which a jury could reasonably infer that Ballard and Rubenstein were deliberately indifferent to Plaintiff's serious medical needs. Thus, the undersigned further proposes that the presiding District Judge **FIND** that there are no genuine issues of material fact and that Ballard and Rubenstein are entitled to judgment as a matter of law on Plaintiff's Eighth Amendment claims against them.

## IV.   RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Defendants' motions for summary judgment (ECF Nos. 114 and 116) and dismiss this matter from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, Chief United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to the opposing parties and Chief Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

July 28, 2021

Dwane L. Tinsley
United States Magistrate Judge