**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

KEITH W.R. LOWE

                Plaintiff,

v.                              CIVIL ACTION NO.  2:17-cv-02345

DR. SHERRY JOHNSON, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff's Amended Complaint under 42 U.S.C. § 1983 against Dr. Sherri Johnson, in her individual capacity; David Ballard, former warden of Mount Olive Correctional Complex ("MOCC"); and James Rubenstein, the former Commissioner of WVDOC, in his individual and official capacities (collectively, "Defendants").[1]  (ECF No. 19.)  By Standing Order entered April 13, 2017, this action was referred to United States Magistrate Judge Dwane L. Tinsley for submission of proposed findings and a recommendation for disposition ("PF&R"). (ECF No. 3.)  Magistrate Judge Tinsley entered his PF&R on July 28, 2021, recommending that the Defendants' motions for summary judgment be granted and that this matter be dismissed from the docket of the court.  (ECF No. 127.)  On or about August 20, 2021, Plaintiff filed objections to the PF&R.[2]  (ECF Nos. 134, 135.)  Then, on September 3, 2021, Defendant Johnson filed a

---

[1] At this juncture, all other defendants and claims have been dismissed.  (*See* ECF Nos. 69, 74.)
[2] The Court extended the deadline to object to the PF&R through August 31, 2021, and, thus Plaintiff's objections are timely.  (*See* ECF No. 133.)

Response to Plaintiff's Objections to Proposed PF&R. (ECF No. 137.) Defendants Ballard and Rubenstein filed their response in opposition to Plaintiff's objections on September 7, 2021. (ECF No. 138.)

For the reasons discussed more fully herein, the Court **OVERRULES** Plaintiff's objections, (ECF Nos. 134, 135), and **ADOPTS** the PF&R. Moreover, the Court **DENIES** Plaintiff's Motion for Extension of Time to Respond, (ECF No. 130), and Plaintiff's Motion for Status Hearing, (ECF No. 128), **AS MOOT**.

### I.   Background[3]

A detailed recitation of the extensive facts of this action can be found in the PF&R, (ECF No. 127), and therefore need not be repeated herein. The Court will provide a discussion of any relevant facts as necessary throughout this opinion to resolve Plaintiff's objections.

Plaintiff has been diagnosed with epilepsy and suffers from seizures as a result of this diagnosis. (ECF No. 19 at p. 10, ¶ 15.) While in custody at the MOCC, he was provided healthcare services by Defendant Johnson. (ECF No. 19.) On or about April 2, 2015, Defendant Johnson terminated Plaintiff's Dilantin prescription, which he was prescribed to help manage his epilepsy. (ECF No. 19 at p. 11, ¶ 21.) Effective administration of Dilantin requires that the individual taking Dilantin undergo regular blood testing; however, this was problematic for Plaintiff, in part, because he has a "bad needle phobia". (*See* ECF No. 114-2.) To eliminate the need to take regular blood draws from Plaintiff, several weeks later, Defendant Johnson prescribed Plaintiff an alternative anti-seizure medication—Keppra. (ECF No. 116-1.) Unlike Dilantin, Keppra does not require

---

[3] For the purposes of this order, the Court treats Plaintiff's verified Amended Complaint as the equivalent of an affidavit. *Willams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) ("[A] *verified* complaint is the equivalent of an opposing affidavit for summary judgment purposes when the allegations contained therein are [sworn under the penalty of perjury to be true and are] based on personal knowledge.").

regular blood draws to ensure effectiveness and safety of the medication.  (*See* ECF No. 116-1.)  Plaintiff contends he did not start receiving Keppra—the alternative anti-seizure medication—until on or about April 21, 2015.  (ECF Nos. 76-1, 122 at 6.)

Between the discontinuation of Dilantin and Plaintiff's receipt of the new medication, Plaintiff alleges that he suffered at least two seizures.  (ECF No. 76-1.)  Plaintiff notified Ballard and Rubenstein, in writing, of the termination of his medication and his subsequent seizures.  (ECF Nos. 114-4, 114-5.)  As the PF&R notes, "[a]ccording to their own affidavits, because [Defendants Ballard and Rubenstein] had no medical training or expertise enabling them to properly address medical or pharmacological issues, Defendants Ballard and Rubenstein regularly deferred any inmate grievances or complaints pertaining to such treatment for handling by the contracted medical professionals employed by Wexford Health Sources, Inc."  (ECF No. 127 at 6) (citing ECF Nos. 114-4, 114-5).

Plaintiff alleges that the seizures he had between the termination of Dilantin and his receipt of Keppra caused him to urinate, defecate, and sustain a head injury.  (ECF No. 19 at pp. 13-14, ¶ 33.)  Plaintiff further claims that these seizures could have been prevented if he had received an alternative medication sooner or had been permitted to continue taking Dilantin.  (ECF No. 19 at p. 14.)  However, Plaintiff does not present any expert testimony from a qualified medical professional or verifiable evidence to validate this claim. Comparatively, Defendant Johnson points out that Plaintiff had a seizure while still on Dilantin and provides a proposed expert report that states their expert, Dr. Constantine Amores, reviewed 33 pages of Plaintiff's medical records and opined that it was "reasonable" to discontinue the Dilantin prescription and to prescribe the

alternative medication. (ECF No. 114-1.) Again, Plaintiff does not have an expert witness, testimony, or evidence to rebut this reasonableness assertion.

The PF&R thoroughly analyzes each of Defendants' arguments that are contained in the motions for summary judgment and recommends this Court grant Defendants' motions for summary judgment, (ECF Nos. 114, 116), and dismiss this matter from the docket of the court. (ECF No. 127.) Plaintiff filed objections to the PF&R, (ECF Nos. 134, 135), and Defendants filed responses in opposition to Plaintiff's objections. (ECF Nos. 137, 138.) This matter is now ripe for review by this Court.

## II.    Legal Standard

The Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Failure to file timely objections constitutes a waiver of *de novo* review and a party's right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); *see also Synder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). In addition, this Court need not conduct a *de novo* review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In reviewing those portions of the PF&R to which Plaintiff has objected, the Court will consider the fact that Plaintiff is acting *pro se*, and his pleadings will be accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978).

4

*III.     Discussion*

Plaintiff objects to the PF&R in two separate filings: (1) Plaintiff's Objections to Judge Dwane Tinsley's Proposed Findings and Recommendations, (ECF No. 134), and (2) Plaintiff's Objections to Proposed Findings and Recommendations Granting Defendants' Ballard and Rubenstein Summary Judgment, (ECF No. 135).

As an initial matter, the Court is only required to entertain specific objections to the PF&R and need not undergo a full analysis of general or conclusory objections to the PF&R.  *Orpiano*, 687 F.2d at 47.  Thus, at the outset, the Court notes that ECF No. 135 merely makes general and conclusory objections to the PF&R's recommendation that Ballard and Rubenstien's Motions for Summary Judgment be granted.  ECF No. 135 fails to state its objections with sufficient specificity to warrant a *de novo* review of those objections. *See id*.  Accordingly, the Court **OVERRULES** Plaintiff's objections in ECF No. 135.

The Court now turns its attention to Plaintiff's objections in ECF No. 134 ("Plaintiff's Objections").  In pertinent part—Plaintiff's Objections consist of eight pages of questions that concern Plaintiff's deliberate indifference claim against Defendants.[4]  (ECF No. 134.)  To provide a backdrop for these objections, Plaintiff claims that Defendants' deliberate indifference to his serious medical condition has violated his rights under the Eighth Amendment's guarantee against cruel and unusual punishment. (ECF No. 19.)  More specifically, Plaintiff claims that "as a direct and proximate result of [Defendants'] deliberate indifference to [his] serious medical needs and

---

[4] The other eight pages of ECF No. 134 merely contain a copy of Plaintiff's previously filed Motion in Opposition to Defendant Dr. Sherri Johnsons Motion for Summary Judgment.  The Court does not consider these last eight pages for its analysis of the PF&R and objections as they do not specifically raise objections to the PF&R and were previously considered by Magistrate Judge Tinsley during the preparation of the PF&R.

failure to give [him] his (Dilantin) seizure medication, [he] suffered physical and mental, emotional injuries."  (ECF No. 19 at ¶ 33.)

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beron*, 896 F.2d 848, 851 (4th Cir. 1990) (overruled on other grounds). "[M]ere negligence or malpractice does not violate the Eighth Amendment." *Id.* (citing *Estelle*, 429 U.S. at 106).  Rather,

> [d]eliberate indifference may be demonstrated by either actual intent or reckless disregard.  A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position.

*Id.* (internal citations omitted). Demonstrating deliberate indifference to a serious medical need is a high bar.  *Redden v. Ballard*, No. 2:17-cv-01549, 2018 WL 4327288, at *6 (S.D.W. Va. July 17, 2018).

An Eighth Amendment claim based on deliberate indifference to serious medical needs has two prongs: one objective and one subjective.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013).  "Objectively, the inmate's medical condition must be 'serious'—'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)).  The subjective prong goes to culpability, and in "prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety."  *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 302–03 (1991)).

6

To satisfy the subjective prong, a plaintiff must establish that an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837(1994); *see also White by White v. Chambliss*, 112 F.3d 731, 737 (4th Cir. 1997) ("[D]eliberate indifference, . . . implies at a minimum that defendants were plainly placed on notice of a danger and chose to ignore the danger notwithstanding the notice."). Knowledge of a substantial risk of danger may be inferred "from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842–43; *see also Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) ("[A]n injury might be so obvious that the factfinder could conclude that the [prison official] did know of it because he could not have failed to know of it.").

Moreover, disagreements between a healthcare provider and the inmate over a diagnosis and the proper course of treatment are not sufficient to support a deliberate indifference claim as questions of medical judgment are generally not subject to judicial review. *Wright v. Collins*, 776 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). As the Fourth Circuit notes, an inmate is not entitled to unqualified access to health care and treatment may be limited to what is medically necessary and not "that which may be considered merely desirable" to the inmate. *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977). "[A] prisoner does not enjoy a constitutional right to the treatment of his . . . choice[,]" but—rather—he is entitled to "reasonable" and "adequate" medical care. *See De'lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013); *see also Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977).

With the law guiding Plaintiff's claims now fully stated herein, the Court will examine Plaintiff's specific objections under the *de novo* standard.  Plaintiff's conclusory and general objections in ECF No. 134 will not be discussed.  For ease of discussion, related objections will be grouped together in subsections below,

### A.  *Plaintiff's Objections to Findings Related to Deliberate Indifference Generally*

Plaintiff makes several objections to the PF&R that do not seem to pertain to a specific defendant but, rather, relate to the PF&R's general analysis of the deliberate indifference claim. First, Plaintiff questions the PF&R's failure to expressly find that his diagnosed seizure disorder is a "serious medical condition" for the purposes of a deliberate indifference claim.  (ECF No. 134 at p. 2).  However, this Court notes that such a finding is not necessary to conclude that there are no genuine issues of material fact and that Defendants are entitled to judgment as a matter of law on Plaintiff's deliberate indifference claims. There are two prongs to an analysis of an Eighth Amendment claim based on deliberate indifference to serious medical needs, and there must be evidence of both prongs for a successful claim.  *See*, *e.g.*, *Farmer*, 511 U.S. at 834 (1994).

Thus, while the PF&R does not provide an in-depth examination of the first prong— whether the inmate's medical condition is objectively serious—the PF&R does provide a full analysis and concludes that the second, subjective prong, is not met.[5]  (ECF No. 127 at pp. 15, 18.) Since one of the two necessary prongs for a deliberate indifference claim is not met—failing to conclusively determine whether Plaintiff's medical condition satisfies the objective prong of the analysis does not render the PF&R inadequate.  Accordingly, the Court **OVERRULES** Plaintiff's

---

[5] This Court's full analysis of this subjective prong can be found below in Section III(B), where the Court examines whether Defendant Johnson's treatment of Plaintiff's seizure disorder rises to the level of deliberate indifference.

objections to the PF&R that suggest its failure to fully address the first prong of the deliberate indifference analysis renders its findings unworthy of consideration.

Second, in his objections, Plaintiff questions the finding that he had a seizure while on Dilantin, (ECF No. 134 at p. 3); however, this objection is patently inconsistent with Plaintiff's prior acknowledgement that he had a "pretty bad" seizure in mid-February while taking Dilantin, (ECF Nos. 19-7).   Thus, the Court **OVERRULES** Plaintiff's objections to the PF&R's finding that the evidence suggests Plaintiff had a seizure while taking Dilantin in February 2015.

Third, Plaintiff makes a specific objection to the PF&R's suggestion that he refused to give blood as required to stay on Dilantin.  (ECF No. 134 at pp. 3-5, 8).  To the extent there is a question of why there were insufficient blood analyses to keep Plaintiff safely on Dilantin—it is immaterial to the analysis for the deliberate indifference claim.[6]  The crux of Plaintiff's deliberate indifference claim is whether the treatment of his seizure disorder was adequate and reasonable so as to not violate the Eighth Amendment guarantee against cruel and unusual punishment.  Whether or not Plaintiff engaged in regular blood draws is not material to that analysis as the focus of Plaintiff's deliberate indifference claim centers on whether the discontinuation of Plaintiff's Dilantin prescription and the nearly three-week delay of Plaintiff's receipt of the substitute medication caused Plaintiff's alleged harm and was in violation of the Eighth Amendment.

Thus, any dispute regarding why the blood draws were not occurring is immaterial and is not sufficient to overcome an adequately supported motion for summary judgment.  *See Hupp v. Cook*, 931 F.3d 307 (4th Cir. 2019) (defining a material fact for summary judgment purposes as a

---

[6] Moreover, the Court believes there is sufficient evidence that Plaintiff was at least partially responsible for the lack of blood draws as he indicated multiple times that is has a "bad needle phobia" and indicated in an April 7, 2015 letter to Defendant Ballard that he refused to give blood.  (ECF No. 114-2.)

fact that might affect the outcome of the suit under the governing law); *see also Bostic v. Shaeder*, 760 F.3d 352, 370 (4th Cir. 2014) ("Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'") (citation and internal quotation marks omitted.)   Consistent with this analysis, the Court **OVERRULES** Plaintiff's objections pertaining to any alleged dispute about why regular blood draws were not occurring when he was taking Dilantin.

### B.  *Plaintiff's Objections to Findings Related to Claim against Johnson*

Plaintiff's remaining objections primarily pertain to whether Defendant Johnson's treatment of Plaintiff's epilepsy subjectively amounts to deliberate indifference. (*See* ECF No. 134 at pp. 5-8.)   Generally, Plaintiff's Objections pose questions about whether Defendant Johnson sufficiently or reasonably treated Plaintiff's epilepsy. For example, Plaintiff asks whether Defendant Johnson's termination of Dilantin without immediately prescribing another medication to manage Plaintiff's seizures was reasonable and why Defendant Johnson choose that particular course of action.  (ECF No. 134 at p. 5-6.)   Plaintiff also suggests that Defendant Johnson put him at serious risk of having seizures and serious injury when she "abruptly stopped [his] anti-seizure meds on April 2, 2015, without [immediately] providing [him] with another kind."  (ECF No. 134 at p. 7.)   Plaintiff further questions whether Defendant Johnson told him he had to sign an Against Medical Advice ("AMA") form if he continued to refuse to give blood while taking Dilantin,[7]

---

[7] The Court notes the January 29, 2015 Physicians' Order, which is attached to Plaintiff's Memorandum in Opposition to Defendant Ballard, Rubenstein and Dr. Johnson's Motion to Dismiss, indicates that Defendant Johnson instructed Plaintiff that he would need to execute an AMA form if he refused to submit to bloodwork.  (*See* ECF No. 76-3.) Outside of Plaintiff's self-serving testimony in his objections that his Dilantin prescription was terminated without notice, there is no evidence in the record to indicate that the PF&R misrepresented the fact that Defendant Johnson discussed the need for an AMA form with Plaintiff.  Rather, in the body of Plaintiff's Memorandum in Opposition to Defendant Ballard, Rubenstein and Dr. Johnson's Motion to Dismiss—Plaintiff states that Defendant Johnson "told him that if he refused to give blood, then he needed to at lest [sic] sign a [sic] AMA for, which is common practice." (ECF No. 76 at p. 2.)

(ECF No. 134 at p. 4), and refutes the fact that he was told that if he refused to give blood then he would be taken off Dilantin,[8] (ECF No. 134 at p. 4). In sum, Plaintiff's Objections question the PF&R's findings that "there is an absence of evidence establishing that Johnson disregarded a known risk of harm to Plaintiff or that his treatment was so grossly incompetent, inadequate, or excessive as to shock the conscience or intolerable to fundamental fairness" and that "Plaintiff failed to establish that Johnson's conduct proximately caused his alleged injuries." (ECF No. 127 at pp. 14-15.)

However, in objecting to these findings in the PF&R, Plaintiff fails to provide or direct the court to any evidence not already considered by the PF&R.  Plaintiff provides no expert testimony regarding the reasonableness of his treatment and merely continues to speculate that Defendant Johnson's decision to terminate his Dilantin prescription and Plaintiff's receipt of Keppra nearly three weeks later is not reasonable or adequate care. To date, Plaintiff's objections and his response to Defendant Johnson's Motion for Summary Judgment fail to present actual evidence to support his proposition that the time between his discontinuance of Dilantin and commencement of Keppra proximately caused his alleged seizures on April 6 and/or April 11, 2015.  Plaintiff's objections fail to provide any such evidence and fail to provide evidence that the delay between the discontinuance of Dilantin and the commencement of Keppra was unreasonable, inadequate, or improper as to rise to the level of deliberate indifference.  Put simply, there is no evidence to indicate that the treatment Plaintiff received demonstrates a deliberate indifference to his health and safety.  At most Plaintiff's objections to the PF&R express his disagreement with Defendant

---

[8] While Plaintiff's verified Amended Complaint asserts that Defendant Johnson did not tell him that she would stop his Dilantin prescription if he refused to submit to blood tests, (*e.g.*, ECF No. 19 ¶ 24), Plaintiff acknowledges that Defendant Johnston discussed with him the possibility of switching from Dilantin to Keppra—as Keppra did not require him to give blood.  (ECF No. 76 at p. 2.)

Johnson over the proper course of treatment for his epilepsy. This disagreement, without more, is patently insufficient to establish a deliberate indifference claim. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright*, 766 F.2d at 849 (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)). Here, Plaintiff fails to provide evidence of exceptional circumstances that could establish that there was anything but a disagreement between him and Defendant Johnson on Plaintiff's proper medical care.

On the other hand—Defendant Johnson has presented evidence, in the form of a medical expert's opinion, that the medical care she provided to Plaintiff was both reasonable and adequate. (*See* ECF NO. 117 at p. 9.) Dr. Amores, Defendant Johnson's medical expert, has reviewed Plaintiff's pertinent medical records and Defendant Johnson's treatment of Plaintiff's epilepsy. (ECF No. 117 at p. 9.) After his review of those records, Dr. Amores opined that "it was reasonable for Dr. Johnson to discontinue the Plaintiff's Dilantin due to the Plaintiff's refusal to submit to blood testing, and it was reasonable for Dr. Johnson to prescribe Keppra as an alternative drug which does not requires blood testing." (ECF No. 117 at p. 9.) Dr. Armores also found no issues with "the timing between the discontinuance of the Plaintiff's Dilantin and Dr. Johnson's prescription of Keppra[.]" (ECF No. 117 at p. 9.) Moreover, as to causation, Defendant Johnson aptly points out that Plaintiff had a seizure while taking Dilantin, so Plaintiff's contention that the termination of the Dilantin caused his additional seizures is merely speculative. (ECF No. 117 at 11.)

Plaintiff's own speculative belief that the cessation of one medication and the delay in starting a substitute medication caused him to have seizures that he would not have otherwise had is insufficient to overcome a motion for summary judgment. *See Porter v. Clark*, No. 3:14-cv-16583, 2016 WL 205492 (S.D.W. Va. Jan. 15, 2016) ("Plaintiff must present evidence to demonstrate causation beyond his personal belief and the timing of events. Merely having Plaintiff testify that he was not given medication for a period of time and he thinks it caused a medical problem is insufficient evidence for a reasonable juror to return a verdict in his favor."). To overcome Defendant Johnson's properly supported motion for summary judgment Plaintiff must provide more than "conclusory or speculative allegations" and "a mere scintilla of evidence in support" of his claim is not enough. *Germain v. Metheny*, 539 Fed. Appx. 108, 109 (4th Cir. 2013) (citing *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002)). Here, Plaintiff fails to do that.

Accordingly, and after a review of evidence proffered by Plaintiff in support of his deliberate indifference claims, the Court **FINDS** that Plaintiff fails to meet his burden of proving the elements of his deliberate indifference claims and **OVERRULES** Plaintiff's objections to the PF&R's findings that there is a lack of evidence to support a claim of deliberate indifference against Defendant Johnson and to establish that Defendant Johnson's conduct proximately caused Plaintiff's alleged harm. The Court further **FINDS** that there are no genuine issues of material facts and that Defendants are entitled to judgment as a matter of law.

## IV. Conclusion

For the foregoing reasons, the Court **OVERRULES** Plaintiff's objections, (ECF Nos. 134, 135), **ADOPTS** the PF&R, (ECF No. 127), **GRANTS** Defendants' Motions for Summary

Judgment, (ECF Nos. 114, 116), and **DISMISSES** this case from its docket.  Based on the rulings

herein, the Court **DENIES** Plaintiff's Motion for Extension of Time to Respond, (ECF No. 130),

and Plaintiff's Motion for Status Hearing, (ECF No. 128), **AS MOOT**.  The Clerk is **DIRECTED**

to remove this action from this Court's docket.

       **IT IS SO ORDERED**.

       The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any

unrepresented party.

               ENTER:       September 20, 2021

               _____

               THOMAS E. JOHNSTON, CHIEF JUDGE

14